```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
UNITED STATES OF AMERICA,          :      05 Cr. 203 (LMM)

             - v -                 :      MEMORANDUM AND ORDER

OSCAR ADOLFO NIETO-AYALA,          :

                  Defendant.       :
-----------------------------------x
```

McKENNA, D.J.

**1.**

On March 30, 2005, the above defendant, an alien, pleaded guilty to a one-count first superseding information charging him with entering the United States after having been deported subsequent to a conviction for an aggravated felony, without the permission of the Attorney General, in violation of 8 U.S.C. § 1326(a) & (b)(2).

Defendant now moves, prior to sentencing, for leave to withdraw his guilty plea and for dismissal of the indictment pursuant to 8 U.S.C. § 1326(d), "on the ground that the deportation proceedings were fundamentally unfair and in violation of the due process clause." (Def. Mem. at 1.) Defendant claims that, because of ineffective assistance of counsel during his deportation proceedings, he was unable to obtain a hearing which would probably

have resulted in waiver of deportation under former section 212(c) of the Immigration and Naturalization Act ("INA").[1]

**2.**

> [T]he Supreme Court [has] held that an alien [can] collaterally challenge the validity of a deportation order when the order is being used to form the element of a criminal offense and the alien has been denied any possibility of judicial review. The Court alluded to procedural defects that "are so fundamental that they may functionally deprive the alien of judicial review," but refused to delineate what those procedural defects might be.

United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002) (citing and quoting United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 & n.17 (1987)). Congress modified the Mendoza-Lopez holding, and codified it, in 8 U.S.C. § 1326:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that--
>   (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

---

[1] Section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994), "has been interpreted to give aliens in deportation proceedings the right to apply for a discretionary waiver of deportation." Brown v. Ashcroft, 360 F.3d 346, 349 (2d Cir. 2004) (citing Buitrago-Cuesta v. INS, 7 F.3d 291, 292 (2d Cir. 1993)). Section 212(c) was repealed in 1996 by section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, 110 Stat. 3009-546 et seq. (1996). St. Cyr v. INS, 229 F.3d 406, 409 (2d Cir. 2000), aff'd, INS v. St. Cyr, 533 U.S. 289 (2001). In St. Cyr, however, the Supreme Court, affirming the Second Circuit, held that "Section 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 290. Defendant comes within the quoted St. Cyr holding.

2

>        (2) the deportation proceedings at which the
>   order was issued improperly deprived the alien
>   of the opportunity for judicial review; and
>        (3) the entry of the order was fundamentally
>   unfair.

8 U.S.C. § 1326(d).

The collateral challenge permitted by <u>Mendoza-Lopez</u> may be asserted in the case initiated by the indictment charging the deportation as an element, as in, <u>e.g.</u>, <u>United States v. Perez</u>, 330 F.3d 97 (2d Cir. 2003).

**3.**

The records of the proceedings leading up to defendant's deportation show the following:[2]

Defendant, a citizen of Columbia, entered the United States as a lawful permanent resident on August 8, 1984. On or about January 6, 1992, in the United States District Court for the District of New Jersey, he was sentenced, upon a plea of guilty, to facilitating the distribution of cocaine, to four months of imprisonment, and on or about June 15, 1992, in the New Jersey Morris County Superior Court, he was sentenced, for the possession of cocaine, to 90 days of imprisonment.[3]

---

[2] <u>See</u> Def. Mem. Exs. A, C-H; information regarding defendant's prior convictions appears in <u>id.</u> Ex. B., the Department of Probation's Presentence Investigation Report dated May 12, 2005 ("PSR") in relation to the present case (<u>see</u> PSR ¶¶ 23-28).

[3] The superseding information refers to the first of these convictions as the statutory prior aggravated felony.

3

On May 12, 1992 (after two adjournments) a deportation hearing was held before an Immigration Judge. (Def. Mem. Ex. A [hearing transcript].) Defendant's deportability was found by the Judge to have been established, and his counsel advised the Judge that he wished to apply for relief under Section 212(c) of the INA, and was given until June 2, 1992 to file an application therefor, the hearing date being set for June 10, 1992. (Id. at 9-10.) Counsel did not file an application for Section 212(c) relief by June 2, 1992, however, and, on June 10, 1992, finding that the application for relief from deportation had not been filed in a timely manner and that defendant had thus abandoned any and all claims for relief from deportation, the Judge ordered defendant to be deported. (Def. Mem. Ex. F.) The order was (it appears from its face) served on defendant's counsel and on "T/A," probably "trial attorney" for the government (cf. Ex. A at 5), but not on defendant personally. The order set June 23, 1992 as the deadline for filing an appeal. (Def. Mem. Ex. F.)

On June 22, 1992, a different lawyer filed an appeal on behalf of defendant with the Board of Immigration Appeals ("BIA") (Def. Mem. Ex. G), asserting that the Immigration Judge erred in determining that defendant intended to abandon the right to seek a waiver of deportability under Section 212(c), and that the failure to file an application for such relief was the result of ineffective assistance of defendant's original counsel. On

4

June 24, 1992, defendant's first lawyer filed an untimely notice of appeal from the Immigration Judge's decision and an application for Section 212(c) relief. (See Def. Mem. Ex. H [BIA decision, Sept. 12, 1992], at 1 n.1 and 2.)

The BIA, in a decision dated September 5, 1992 (Def. Mem. Ex. H) dismissed the timely appeal because no brief, or other necessary submissions, were filed. (Def. Mem. at 2 & n.2.) It did not consider the untimely appeal "except to the extent that documents filed with it may be construed as a motion to reopen and remand." (Id. at 1 n.1.) That motion, however, was denied because defendant "did not timely file the required application or furnish an acceptable explanation for his failure to do so." (Id. at 3.) Defendant was deported on November 16, 1992. (PSR ¶ 6.)

Defendant reentered the United States, without the permission of the Attorney General, in October of 1993.

**4.**

Under 8 U.S.C. § 1326(d), in order to succeed in challenging an order of deportation, defendant must show that "1) all administrative remedies have been exhausted; 2) the deportation proceeding improperly deprived him or her of the opportunity for judicial review; and 3) the entry of the deportation order was

fundamentally unfair." Perez, 330 F.3d at 100 (citations omitted). Defendant has done so.[4]

**5.**

Defendant exhausted his administrative remedies. He appealed to the BIA, and, also, filed papers which the BIA treated as a motion to reopen. "[Defendant] asked the BIA to do the one thing it could do: reopen the proceedings. Therefore, [defendant] has satisfied the exhaustion requirement." Perez, 330 F.3d at 101 (footnote omitted).

**6.**

Defendant was improperly deprived of the opportunity for judicial review. "Deprivation of the opportunity for judicial review can be established by demonstrating ineffective assistance of counsel, and the failure of counsel to file a § 212(c) application can constitute ineffective assistance of counsel." Perez, 330 F.3d at 101 (citation omitted). Here, counsel's failure to file a section 212(c) application within the time set by the Immigration Judge is, plainly enough, ineffective assistance of counsel. Id. at 102. In order to satisfy this prong of the section 1326(d) test, however, defendant must show more than "'that competent counsel would have acted otherwise'" (that is obvious), but also "that he was prejudiced by his counsel's performance.'"

---

[4] The government does not persuasively dispute this. Its response to the motion largely argues that defendant, having pleaded guilty, should not be allowed to withdraw that plea.

Perez, 330 F.3d at 101 (quoting Rabiu v. I.N.S., 41 F.3d 879, 882 (2d Cir. 1994)). He must also make "a prima facie showing of eligibility for § 212(c) relief, and [that] the alien 'could have made a strong showing in support of his application.'" Id. at 102 (quoting Rabiu, 41 F.3d at 883).

An alien is not eligible for section 212(c) relief if he or she "has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years." Rabiu, 41 F.3d at 883 (citing 8 U.S.C. § 1182(c) as amended in 1990), and Buitrago-Cuesta, 7 F.2d at 292). Here, although defendant was convicted of an aggravated felony, he served only four months of imprisonment.

In Perez, the Court of Appeals (citing Lovell v. INS, 52 F.3d 458, 461 (2d Cir. 1995)) set out a number of factors -- four adverse and nine favorable -- that an immigration judge would likely consider in informing his or her discretion in passing on a section 212(c) application once eligibility is established. 330 F.3d at 102.

Here, of the adverse factors, defendant had been convicted of a drug felony, and had also been convicted in a state court of a drug offense (for possession: the PSR does not indicate whether the offense was a felony or misdemeanor). The sentences imposed for these offenses, however -- four months and 90 days, respectively -- do not suggest major criminal activity. It is not

at all irrelevant to note, however, that these offenses were committed in late 1985 and early 1986 (PSR ¶¶ 25, 27), and are defendant's only convictions, although he was in the United States from August of 1984, when he first entered, through November of 1992, when he was deported, and again from October of 1993, when he returned (illegally), through his arrest in February of this year.

On the positive side, defendant has a significant family tie to the United States: his mother who resides here and suffers from a number of illnesses. (PSR ¶¶ 11, 31.)[5] Defendant has a steady employment history, having worked for a single company from 1987 until his arrest in 2005. (PSR § 40.)[6] As in Perez, "[t]he government does not claim that any negative factors other than his conviction would have weighed against him at the time of his deportation. Accordingly, [defendant] could have made a strong showing in favor of § 212(c) relief." 330 F.3d at 102.[7]

---

[5] Defendant has stated that he returned to the United States illegally in order to support his mother. (PSR ¶ 11.)

[6] The inquiry here looks to the factors as they stood in 1992, when, had his counsel been effective at all, he would have had a section 212(c) hearing. Looked at today, "genuine rehabilitation," Perez, 330 F.3d at 102, would be evident from the lack of any convictions or other criminal history since the two 1992 convictions.

[7] In St. Cyr, the Supreme Court noted statistics showing that, during the years 1989-1995, 51.5% of § 212(c) applications in which final decisions were reached were granted. 533 U.S. at 296 n.5. That certainly supports defendant's argument that he probably would have received section 212(c) relief.

**7.**

Finally, since defendant was "deprived of the effective assistance of counsel (i.e., . . . a fundamental procedural error had occurred) and . . . prejudice had resulted because he was eligible for § 212(c) relief and could have made a strong showing in support of such relief . . . he has satisfied the 'fundamental unfairness' requirement." Perez, 330 F.3d at 104.

**8.**

The government argues that defendant should not be allowed to withdraw his guilty plea (so as to be able to take advantage of the showing he has now made that the government cannot prove the validity of the order of deportation, which is an element of the charged offense), pointing out (correctly in this respect, in the Court's view) that he does not assert that the plea was not voluntary, and that there are no plea allocution defects.

Under Fed. R. Crim. P. 11(d)(2)(B), a district court may permit withdrawal of a guilty plea prior to sentencing where "the defendant can show a fair and just reason for requesting the withdrawal." Id. In determining whether a defendant has made such a showing a district court will consider "inter alia: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3)

whether the government will be prejudiced by a withdrawal of the plea." United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004) (per curiam) (citation omitted). The voluntariness of a plea, is, of course, very often in issue, but it is not here. But a showing of involuntariness is not a sine qua non to the withdrawal of a plea under Rule 32(d). United States v. Rosen, 409 F.3d 535, 547-48 (2d Cir. 2005). A district court's discretion in determining whether or not to allow the withdrawal of a guilty plea has been described by the Second Circuit as both "broad" and "large." United States v. Franco, No. 00 Cr. 300, 2003 WL 21305352, at *2 (S.D.N.Y. June 6, 2003) (quoting United States v. Couto, 311 F.3d 179, 186 (2d Cir. 2002), and United States v. Saft, 558 F.2d 1073, 1082 (2d Cir. 1977) (Friendly, J.)).

Defendant certainly asserts his legal innocence. An element of the crime with which he is charged in the indictment is that he was deported, and the case law requires that the deportation have been validly ordered. His whole argument is that the order deporting him was not, because of the ineffectiveness of his counsel, valid.

There was no serious delay between defendant's guilty plea and the present motion. Defendant pleaded guilty on March 30, 2003, and defendant's motion is dated June 17, 2003, slightly more

than 11 weeks later.[8]  That period can be described as "while not short, . . . not excessively long."  <u>Franco</u>, 2003 WL 21305352, at *5 (quoting Judge Schwartz' characterization of one month in <u>United States v. Hernandez</u>, No. 99 Cr. 73, 2002 WL 31098505, at *5 (S.D.N.Y. Sept. 18, 2002)).

The government has not argued prejudice.

The defendant has shown a fair and just reason to withdraw his guilty plea, and will be allowed to do so.

* * *

For the reasons set forth above, the underlying deportation order violated defendant's due process rights and therefore cannot be the basis for the prior deportation element in the illegal reentry charge.  Accordingly, defendant's motion is granted, his guilty plea is withdrawn and the indictment is dismissed.

SO ORDERED.

Dated: August 18, 2005

                                        Lawrence M. McKenna
                                        U.S.D.J.

---

[8] On May 31, 2005, counsel for defendant advised the Court in writing that "[t]he government and the defense are currently investigating the validity of the underlying deportation in this matter." (Letter Yasmin Cader, Esq., to Court, May 31, 2005, at 1.)